677 P.2d 497

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Carlos MATA, Defendant-Appellant.**

**No. 13911.**

Court of Appeals of Idaho.

Feb. 28, 1984.

Ismael Chavez, Caldwell, for defendant-appellant.

David Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

Carlos Mata stands convicted of delivering marijuana and heroin. His appeal raises two general issues concerning the heroin charge. (1) Did the state entrap Mata into delivering the heroin? (2) Did the trial court err by limiting testimony regarding events after the heroin transaction, and by ruling that alibi testimony would be inadmissible? For reasons explained below, we hold that Mata was not entrapped and that the district court did not commit reversible error in its rulings on trial testimony. Accordingly, we affirm the judgment of conviction.

I

First, we consider the entrapment issue. This issue poses a twofold task—identifying the legal standards that govern the entrapment defense, and applying those standards to the record before us. We will take each task in turn.

A

"Entrapment" has been defined as "[t]he act of officers or agents of the government in inducing a person to commit a crime not contemplated by him, for the purpose of instituting a criminal prosecution against him." BLACK'S LAW DICTIONARY 477 (rev. 5th ed. 1979); see also W. LaFAVE & A. SCOTT, HANDBOOK ON CRIMINAL LAW 369–74 (1972). Entrapment occurs "when an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a State agent who, desiring grounds for prosecution, originates the criminal design and im-

plants in the mind of the innocent person the disposition to commit the alleged offense." *State v. Hansen*, 105 Idaho 816, 817, 673 P.2d 416, 417 n. 1 (1983); *see also State v. Mantis*, 32 Idaho 724, 187 P. 268 (1920). There is a distinction between originating the idea for an offense and merely furnishing the opportunity to commit it. The latter is not entrapment; rather, it is a legitimate method of ferreting out crime. *E.g., State v. Bush*, 93 Idaho 538, 466 P.2d 578 (1970); *State v. Webster*, 46 Idaho 798, 271 P. 578 (1928).

██ Idaho recognizes, as do nearly all jurisdictions, that a defendant cannot be convicted of a crime he was entrapped into committing. *E.g., State v. McKeehan*, 48 Idaho 112, 279 P. 616 (1929). However, despite its universality, the entrapment defense is not a constitutional doctrine. *United States v. Russell*, 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). Rather, it is a creature of common law. Historically it has been grounded upon the principle that where criminal intent is an element of an offense, such intent must originate in the defendant's mind. It must not be placed there by the government. *E.g., Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). This principle invites a narrow focus upon the defendant's subjective state of mind. Moreover, because it links entrapment with proof of the elements of an offense, the subjective test implicitly treats entrapment as a question for the jury.

Recently, another purpose has been ascribed to the entrapment defense—to discourage official lawlessness in the name of law enforcement. This purpose invites a broader focus upon the objective conduct of government agents. *See generally* Annot., 62 A.L.R.3d 110, 113–17 (1975); *cf. Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (outrageous police tactics may violate due process, precluding conviction even though a defendant's predisposition to crime would bar the traditional entrapment defense). Under the objective approach, the government's conduct is weighed in light of its probable impact not upon the particular defendant but upon "an average person, other than one who is ready and willing, to commit such an offense." *Evans v. State*, 550 P.2d 830, 843–44 (Alaska 1976). A third, hybrid, test—suggesting a balance of subjective and objective factors—also has emerged. *See People v. Barraza*, 23 Cal.3d 675, 153 Cal.Rptr. 459, 591 P.2d 947, 954 (Cal.1979). When an objective or hybrid test is applied, evidence of the government's conduct may involve evidence not germane to the offense charged. Consequently, these tests of entrapment ordinarily present questions of law for the court, rather than for a jury, to decide. W. La-FAVE & A. SCOTT, *supra* at 373–74.

██ The Idaho Supreme Court has not yet examined, in a majority opinion, the comparative merits of the subjective and objective tests of entrapment. *But see State v. Hansen, supra* (Bistline, J., dissenting). However, on several occasions the court has discussed entrapment as a jury issue. *State v. Hansen, supra; State v. Mojica*, 95 Idaho 326, 508 P.2d 556 (1973); *State v. Whitlock*, 82 Idaho 540, 356 P.2d 492 (1960). Implicitly, then, the court to date has employed the subjective test of entrapment. Accordingly, we will apply that test here. However, in the discussion to follow, we also note how an objective approach would yield the same result upon the facts of this case. Thus, we do not close the door today against future application of an objective or hybrid test. We reserve that question for a case in which the choice squarely confronts us.

B

The record here discloses without dispute that a police informant and a deputy sheriff in plain clothes drove to Mata's house. The informant spoke with Mata and asked if he would help them purchase heroin. Mata agreed and the three drove in the informant's car to another house where Mata gave the occupant one hundred dollars in money furnished by the deputy.

The three then drove to yet another location where Mata picked up a tinfoil packet containing heroin and gave it to the informant. Mata later was arrested and charged with delivery of the heroin.

Prior to this transaction, the informant had obtained heroin from Mata on other occasions. The number of such purchases is controverted in the record, but it is undisputed that at least one such prior transaction had occurred. It is also undisputed that the informant was a drug user and once had "shot up" heroin in Mata's presence. There was disputed evidence as to whether Mata ever had turned down a request by the informant to obtain heroin for him.

Upon this evidence, the question of entrapment was presented to the jury. The jury was instructed on entrapment; but those instructions are not in the record, and no issue has been raised about them. Consequently, we presume that the jury applied proper instructions to the evidence when it convicted Mata and rejected his entrapment defense.

■■■ The verdict of a properly instructed jury will not be overturned if it is supported by substantial, competent evidence. The jury is entitled to draw all justifiable inferences from the evidence. *E.g., State v. Greensweig*, 103 Idaho 50, 644 P.2d 372 (Ct.App.1982). Here, if the subjective approach to entrapment were applied, we believe the record contains substantial evidence upon which the jury justifiably could infer that Mata had been predisposed to engage in heroin transactions when given the opportunity to do so. Conversely, if the objective standard were applied, we believe the conduct of the government's agents would not have induced an average person, not already predisposed to engage in heroin transactions, to commit the offense charged here. There has been no showing of oppressive or coercive government conduct which might, under either the subjective or objective test, preclude a con-

viction. *Cf., e.g., United States v. McClure*, 546 F.2d 670 (5th Cir.1977) (reversing conviction upon showing of intimidation). Accordingly, we conclude that Mata's conviction will not be set aside upon the ground of entrapment.

## II

We now turn to Mata's attack upon rulings by the district court, restricting trial testimony by two witnesses. Each ruling will be examined individually.

### A

■■■ Mata contends that the district court improperly prohibited examination of the informant concerning events after the transaction in question.[1] Mata suggests that he might have used post-transaction events either to support his entrapment defense or to "impeach" the informant. However, it is not self-evident how either of these asserted purposes would have been served by such questioning. The record contains no question asked, or sought to be asked, specifically concerning any post-transaction event. Neither does the record contain any offer of proof showing the evidence Mata asserts to have been wrongfully excluded. It is an appellant's burden to furnish a record upon which his contentions of error can be tested. Error will not be presumed. *E.g., State v. Bylama*, 103 Idaho 472, 649 P.2d 1228 (Ct.App. 1982).

In *State v. Palin*, 106 Idaho 70, 675 P.2d 49 (Ct.App.1983), we held that it is the duty of one offering evidence to make clear what the evidence would show, in order that an informed ruling can be made and reviewed on appeal. *See also Jones v. State*, 576 P.2d 997 (Alaska 1978). *Cf.* I.R.C.P. 43(c) (in civil trial, offer of proof should be of "evidence in full"). That duty has not been fulfilled here. We cannot determine whether error actually occurred or, if so, whether it was prejudicial. Ac-

---

1. Mata called the informant as a witness. Consequently, our discussion does not concern the permissible scope of cross-examination.

cordingly, we will not consider this issue further.

B

The final question is whether testimony by Mata's wife was improperly cut off when she was asked about a family visit to her mother's house on the day of the subject heroin transaction. Apparently believing that this question might lead to alibi testimony, the court interceded *sua sponte*. During a colloquy with counsel at the bench, the judge inquired whether Mata had given the state notice of intent to offer an alibi defense. Upon learning that such notice had not been given, the court ruled that no alibi testimony would be permitted. We must now determine whether that ruling was erroneous and, if so, whether the error is reversible.

The law in Idaho on whether a defendant must provide notice of alibi is clear. Idaho Code § 19–519 provides that at "any time after arraignment ... *and upon written demand* of the prosecuting attorney, the defendant shall serve within ten (10) days ... a written notice of his intention to offer a defense of alibi." (Emphasis supplied.) Idaho Criminal Rule 12.1 states that if "the defendant intends to rely upon the defense of alibi, he shall comply with section 19–519, Idaho Code." In this case, the state concedes that the prosecutor made no request for an alibi notice. The prosecutor merely made a discovery demand for the identity of defense witnesses, with which Mata complied. We hold that, absent a specific request under I.C. § 19–519, Mata was not required to give notice of an alibi defense. The trial judge erred in ruling that no alibi testimony would be allowed.

However, it remains to determine whether this error requires the conviction to be reversed. A conviction need not be reversed when an error is harmless. The test is whether it appears from the record that the error contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the error not

occurred. *See, e.g., State v. Palin, supra.* In applying this test we note that Mata made no offer of proof at trial as to what alibi testimony, if any, his wife would have given, absent the court's ruling. Consequently, Mata has been unable to show on appeal any prejudice flowing from the trial court's error. Moreover, Mata's defense at trial was entrapment—a theory necessarily relying upon facts inconsistent with an alibi. Mata's counsel, in both opening and closing arguments, urged the theory of entrapment. Mata himself testified at trial and said nothing about an alibi. His testimony was directed solely toward entrapment. In addition, Mata called the police informant as a witness. The informant, together with the sheriff's deputy, identified Mata as a participant in the heroin transaction. Their testimony in this regard was unrefuted. We conclude, beyond a reasonable doubt, that the district court's error in construing I.C. § 19–519 did not contribute to the verdict. Therefore, it was harmless.

The judgment of conviction is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.